UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FREDDIE MARSALIS (#451967)                               CIVIL ACTION

VERSUS

DR. RANDY LAVESPERE, ET AL.                              NO. 15-0271-JWD-EWD

## RULING

Before the Court are the defendants' Motions for Summary Judgment (R. Docs. 9 and 42). These motions are not opposed.

The *pro se* plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Dr. Randy Lavespere, Dr. Hal MacMurdo, Dr. Paul Toce, Dr. Dwayne Helms, E.M.T. Samuel Gaspard, and several "John Doe" and "Jane Doe" medical technicians employed at LSP, identified only by their "Badge Numbers" (Nos. 19, 543, 93 and 552).[1]   The plaintiff alleges that the defendants have violated his

---

1. The "John Doe" and "Jane Doe" defendants who are identified in the Complaint only by their badge numbers have not been served.  Pursuant to Order dated December 2, 2015 (R. Doc. 27), the Court directed the defendants to provide the identities of these persons and advised the plaintiff that, upon compliance by the defendants, the plaintiff could move for leave to amend his Complaint to substitute properly-named parties.  Although the defendants thereafter provided the identities of the "John Doe" and "Jane Doe" prison employees, *see* R. Doc. 34, the plaintiff has not sought leave to amend his Complaint and has not undertaken any action to have these persons served.  Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff, without good cause, to serve a defendant within 120 days of commencement of an action is justification for dismissal of that defendant from the proceeding.  Although a *pro se* inmate plaintiff is entitled to rely upon service by the United States Marshal, "a plaintiff may not remain silent and do nothing to effectuate such service.  At a minimum, a plaintiff should attempt to remedy any apparent service defects of which a plaintiff has knowledge." *Rochon v. Dawson*, 828 F.2d 1107 (5th Cir. 1987).  Upon being notified of the identities of the "John Doe" and "Jane Doe" prison employees, the plaintiff has taken no action to have them served.  It is appropriate, therefore, that the plaintiff's claims asserted against the "John Doe" and "Jane Doe" defendants be dismissed, without prejudice, for failure of the plaintiff to timely effect service upon them.

constitutional rights through deliberate indifference to his serious medical needs.

The defendants move for summary judgment relying upon the pleadings, Statements of Undisputed Facts, certified copies of the plaintiff's pertinent administrative remedy proceedings, certified copies of the plaintiff's medical records, and the affidavits of defendants Hal MacMurdo, Paul Toce and Randy Lavespere.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Rule 56, Federal Rules of Civil Procedure.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.  *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248.  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a

judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, as amended, the plaintiff alleges that he has had stomach complaints since 2009 and has been prescribed various medications that he asserts have been ineffective. He further alleges that, beginning in January, 2013, he complained that he was vomiting after every meal. He complains that medical technicians at LSP diagnosed him with simple acid reflux, and doctors at LSP have agreed without any physical examination or a review of the plaintiff's medical file. The plaintiff alleges that he has continued to vomit after every meal for 2 years and has lost a substantial amount of weight. The plaintiff alleges that a gastric scope was scheduled by Dr. Lavespere but was later cancelled by defendant Lavespere without justification.

The plaintiff further alleges that, on one visit to Dr. Helms for stomach complaints, he complained about developing numbness in both hands. The plaintiff alleges that Dr. Helms responded that the plaintiff could only receive treatment for one complaint at a time. The plaintiff alleges that doctors at LSP are not qualified to treat or diagnose his condition and are "notorious for allowing a medical situation to become severe before decideing [sic] to treat the condition."

Finally, the plaintiff alleges that he suffered an injury to his right eye in 2011, and defendants Lavespere, MacMurdo and Toce are aware of the injury. The plaintiff alleges that he was referred for evaluation by an eye specialist and was seen 3 or 4 times at the LSU/Tulane eye clinic, where "it was determined surgery was required to correct the problem in 2013 and 2014." The plaintiff complains, however, that defendants Lavespere, MacMurdo and Toce "failed to have

me recommended for surgery at LSU/Tulane and/or have me produced for the required surgery." The plaintiff alleges that an eye specialist at LSU/Tulane has since told him that "a scar has developed over the required place for surgery," and there is nothing further that can be done. The plaintiff alleges that defendants MacMurdo and Toce have told him that, because of budgetary limitations, surgeries for conditions that are not life-threatening will not be authorized at LSP.

In addition to the foregoing, the plaintiff alleges in a supplemental Complaint (R. Doc. 20), that newly named defendants, former Warden Burl Cain and Ass't Warden Stephanie Lamartiniere, are responsible for the implementation of wrongful policies at LSP, for the improper delegation of medical responsibility to unqualified personnel, and for failure to properly address administrative grievances filed by the plaintiff.

Addressing first the plaintiff's claims asserted against defendants Cain and Lamartiniere, the Court notes that whereas most of the defendants have been named in their individual capacities only, *see* R. Doc. 1 at pp. 5-6, defendants Cain and Lamartiniere have been named in both their individual and their official capacities, *see* R. Doc. 20 at p. 2. As such, these two defendants seek dismissal of the plaintiff's claim asserted against them in their official capacities. In this regard, the defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). *See also Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). In addition, in *Hafer v. Melo,* 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.

*Id*. at 25. Accordingly, the plaintiff's claim asserted against defendants Burl Cain and Stephanie Lamartiniere in their official capacities for monetary damages is subject to dismissal. In contrast, the plaintiff's claim for monetary damages asserted against these defendants in their individual capacities remains viable because a claim asserted against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Id*. at 29. In addition, the plaintiff's claim for prospective injunctive relief asserted against the defendants in their official capacities also remains viable because such a claim is not treated as a claim against the state. *Will v. Michigan Department of State Police*, *supra*, 491 U.S. at 71 n.10. Of course, the plaintiff would still be required to establish a deprivation of his constitutional civil rights in order to obtain any entitlement to relief.

Turning to a consideration of the plaintiff's allegations that are not barred by the Eleventh Amendment, the defendants assert that they are entitled to qualified immunity in connection with the plaintiff's claims. Specifically, the defendants contend that the plaintiff has failed to present evidence or sufficiently allege conduct on their part that rises to the level of a violation of the plaintiff's federal constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). Taking the facts as alleged in the light most favorable to the plaintiff, the Court considers whether the defendants' conduct violated the plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-pronged analysis in a particular order – should not be "regarded as an inflexible requirement").

Under *Pearson*, courts now have discretion to decide which of the two prongs of the analysis to address first. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Saucier v. Katz, supra*, 194 U.S. at 201. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation that he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.

Undertaking the qualified immunity analysis, the Court finds that the defendants' motions should be granted. Specifically, the Court concludes that the plaintiff has failed to present evidence sufficient to overcome the defendants' assertion of qualified immunity in connection with his claims of deliberate medical indifference.

It is now well-settled that to prevail on an Eighth Amendment claim for the deprivation of medical care, a prisoner must be able to show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Thomas v. Carter*, 593 Fed. Appx. 338, 342 (5th Cir. 2014), *citing Estelle v. Gamble*, 429 U.S. 97 (1976). Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue because a prisoner's mere disagreement with his medical treatment, absent exceptional circumstances, does not support a claim of deliberate medical indifference. *Gobert v. Caldwell*,

463 F.3d 339, 346 (5th Cir. 2006). Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. *See Zaunbrecher v. Gaudin*, ___ Fed. Appx. ___, 2016 WL 536874 (5th Cir. Feb. 10, 2016). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839-30 (1994). A prison official acts with deliberate indifference only if the official (1) "knows that inmates face a substantial risk of serious bodily harm," and (2) "disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell*, *supra,* 463 F.3d at 346, *quoting Farmer v. Brennan, supra,* 511 U.S. at 847.

The deliberate indifference standard sets a very high bar. The plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Estelle v. Gamble, supra.* Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Easter v. Powell,* 467 F.3d 459, 463 (5th Cir. 2006), *citing Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

In the instant case, the competent summary judgment evidence does not support the plaintiff's claim that the defendants have been deliberately indifferent to his serious medical needs. To the contrary, the evidence reflects that the plaintiff's medical complaints have been routinely addressed and have not been ignored by the defendants. As outlined in the affidavits provided by the defendant physicians, and as confirmed from a review of the plaintiff's medical documentation filed in the record, see R. Doc. 12, the plaintiff has been seen on numerous

occasions by physicians and medical personnel at LSP in connection with his complaints concerning his right eye and stomach. In addition to regular and recurring treatment by physicians and medical personnel employed at the LSP infirmary, he has been referred and seen by specialists in both eye care and gastroenterology at the prison. He has also been referred for appointments with specialists at outside facilities, including the LSP Eye Clinic, the Earl K. Long Medical Center, the Louisiana State University Ophthalmology Clinic, the Interim LSU Hospital Eye Clinic, the Tulane Medical Center, and the LSU Retina Clinic. He has participated in at least one Telemed conference with a specialist in gastroenterology. He has been issued limited duty statuses and double-portion meal trays, and he has been repeatedly prescribed medications deemed appropriate for his condition and complaints. He has undergone diagnostic testing, including but not limited to multiple blood analyses, eye examinations, an ultrasound evaluation and gastric biopsies. Contrary to his assertion that a gastric scope was scheduled but then cancelled by defendant Lavespere, it appears that a gastric scope was in fact undertaken at an outside facility in September 2014, and showed mild erosive gastritis. Contrary to the plaintiff's assertion that the defendants are responsible for delaying and refusing to allow him to undergo recommended surgery for his right eye, it appears that a decision not to undertake eye surgery to repair a macular hole in the plaintiff's right eye was made, not by the defendants or personnel employed at LSP, but instead by *LSU* health care providers in June, 2013. It further appears that subsequent evaluations of the plaintiff's right eye suggest that the macular hole has resolved.

Based on the foregoing, it appears that the crux of the plaintiff's complaint is not that he has been denied medical attention entirely, but rather that such attention has been inadequate, improper or delayed. Specifically, he is apparently unhappy with the care that has been provided, and he believes that additional care is warranted. He expresses disagreement with the

determinations made by prison medical personnel, and he believes that his condition has been misdiagnosed and/or mistreated. Notwithstanding, a failure to refer an inmate plaintiff for additional treatment, diagnostic testing or evaluation is a matter of professional medical judgment that the courts will not normally second-guess in the context of a claim of deliberate medical indifference. *See Cuellar v. Livingston*, 321 Fed. Appx. 373, 374 (5th Cir. 2009) (upholding the dismissal of an inmate's claim as frivolous, noting that "the question whether 'additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment,'" *quoting Estelle v. Gamble, supra*, 429 U.S. at 107). Further, as noted above, although the plaintiff is apparently dissatisfied with the medical care that has been provided to him at LSP, such dissatisfaction does not alone support a claim of deliberate medical indifference. Therefore, liberally construing the plaintiff's Complaint, the Court finds that his allegations, at best, set forth a claim of negligence, misdiagnosis and/or delay in the provision of medical care, and the plaintiff has not sufficiently shown that any deficiencies in his care are due to deliberate indifference on the part of the defendants. Accordingly, the defendants are entitled to summary judgment in connection with the plaintiff's claim of deliberate indifference to his serious medical needs.

In addition to the foregoing, whereas the plaintiff also complains that the defendants have been deliberately indifferent to his complaints regarding numbness in his hands and that defendant Warden Cain has implemented unspecified wrongful policies at LSP regarding health care, the Court agrees with the defendants' contention that the plaintiff has failed to exhaust administrative remedies relative to these claim as mandated by 42 U.S.C. § 1997e. In this regard, pursuant to 42 U.S.C. § 1997e, the plaintiff was required to exhaust administrative remedies available at the prison prior to commencing a civil action in this Court with respect to prison conditions. This provision is mandatory and applies broadly to "all inmate suits about prison life." *Porter v.*

*Nussle*, 534 U.S. 516, 532 (2002). Further, a prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures. *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). Specifically, not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). One of the principal purposes of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'" *Johnson v. Johnson, supra*, 385 F.3d at 516, *quoting Porter v. Nussle, supra*, 534 U.S. at 525. Thus, the degree of specificity necessary in a prisoner's grievance should be evaluated in light of this intended purpose. *Id*.

Upon a review of the plaintiff's pertinent administrative remedy proceedings, *see* R. Docs. 46 through 46-4, the Court concludes that the defendants' motion is well-taken and should be granted relative to the plaintiff's claims of numbness in his hands and the implementation of alleged wrongful health care policies. Specifically, it appears clear that the plaintiff failed to specifically assert these claims in the administrative grievances that he submitted to prison officials prior to the commencement of the instant lawsuit. To the contrary, the claims asserted by the plaintiff in the referenced grievances relate principally to his assertions regarding the alleged failure of prison medical officers to diagnose and provide appropriate care and treatment for the plaintiff's eye and stomach complaints. *See* R. Docs. 16, 16-1, 16-2, 16-3 and 16-4. The plaintiff does not specifically make reference in his grievances to any alleged failure by prison officials to attend to complaints regarding numbness in his hands, and he does not identify any alleged wrongful policies implemented by defendant Cain that have had the effect of denying him

appropriate medical care.² As such, the plaintiff has failed to exhaust administrative remedies regarding these claims, and the defendants are entitled to summary judgment in connection therewith.

Finally, the plaintiff asserts a claim that defendant Cain is responsible for having improperly delegated health care authority to unqualified personnel at LSP, that defendant Lamartiniere, specifically, is not qualified to make health care decision regarding inmates, and that defendant Lamartiniere has also mishandled and improperly denied the plaintiff's administrative claims. These claims are conclusory, are not supported by any evidence in the record, and are clearly without merit. Defendant Lamartiniere is not a physician and does not purport to practice medicine at LSP. To the contrary, defendant Lamartiniere is apparently a supervisory administrative employee at LSP who oversees the healthcare program at the facility. *See* R. Doc. 42-2 at p. 5. The plaintiff provides no evidence that suggests that defendant Lamartiniere is unqualified or untrained to undertake her administrative duties, and the plaintiff otherwise fails to

---

2. In addition, the plaintiff has also failed to sufficiently allege or show the personal involvement of defendant Cain in any aspect of the plaintiff's medical care. In this regard, in order for a prison official to be found liable under § 1983, the official must be shown to have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be shown to be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any suggestion that a named defendant may be responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal, supra*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must be able to show that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law, *Lozano v. Smith, supra*, 718 F.2d at 768, neither of which have been shown by the plaintiff.

identify any particular LSP employee, physician, nurse, or medical technician who is unqualified or untrained or to whom is delegated authority that they are not qualified to exercise. Further, with regard to the alleged failure of defendant Lamartiniere to properly handle the plaintiff's administrative grievances, the law is clear that a mere failure to investigate or favorably respond to an inmate's complaints or administrative grievances is not a basis for liability under § 1983. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005). To the contrary, the plaintiff has no constitutional right to an investigation or to a favorable response to his written complaints or grievances, and there is no due process right inherent in such a claim. *Id*. Accordingly, the plaintiff's claims in this regard are subject to dismissal as a matter of law.

Finally, in addition to the foregoing, the Court notes that the plaintiff has not filed any opposition in response to the defendants' motions for summary judgment. In the context of a motion for summary judgment, it is well-settled that a plaintiff may not rest upon mere allegations or assertions contained in his Complaint in opposing a properly supported motion. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 324. Specifically, Rule 56 requires that, in response to such a motion, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. Stated another way, in order to meet his burden of proof, the party opposing a motion for summary judgment "may not sit on its hands, complacently relying" on the pleadings. *Weyant v. Acceptance Insurance Co.*, 917 F.2d 209, 212 (5th Cir. 1990). When a party does not file an opposition to a motion for summary judgment, the Court is permitted to consider the facts presented in support of the motion as undisputed and to grant summary judgment if the facts show that the movant is entitled to judgment in his favor. *See Jegart v. Roman Catholic Church Diocese of Houma - Thibodaux*, 384 Fed. Appx. 398, *2 (5th

Cir. 2010). Further, pursuant to Local Rule 56(b) of this Court, the plaintiff's failure to oppose the defendants' motions for summary judgment allows the Court to conclude that all of the facts contained in the defendants' Statements of Uncontested Material Facts are deemed to be admitted. In the instant case, despite notice and an opportunity to appear, the plaintiff has not come forward with any opposition to the defendants' motions for summary judgment or to the affidavits and documentary evidence produced in support thereof. Accordingly, there is nothing before the Court which tends to dispute the defendants' assertions regarding the plaintiff's medical care and treatment. Therefore, based upon the plaintiff's failure in this case to oppose the defendants' motions, failure to designate specific evidence in the record of sufficient caliber and quantity to create a genuine issue for trial, and failure to produce supporting evidence on his own behalf, the Court concludes that the defendants' motions are well-taken and that the defendants are entitled to summary judgment as a matter of law.[3] Accordingly,

**IT IS ORDERED** that the "John Doe" and "Jane Doe" defendants named in the plaintiff's Complaint and Amended Complaint be **DISMISSED**, without prejudice, for failure of the plaintiff to serve these defendants within the delays allowed by Rule 4(m), Fed. R. Civ. P.

**IT IS FURTHER ORDERED** that the defendants' Motions for Summary Judgment (R. Docs. 9 and 42) be **GRANTED**, dismissing the plaintiff's federal constitutional claims asserted

---

3. In light of the Court's findings, the Court need not address the defendants' contention that certain of the plaintiff's claims are barred by passage of the applicable limitations period. Notwithstanding, the Court agrees with the defendants that the plaintiff's claims concerning events occurring more than a year prior to the filing of the Complaint (not counting the time during which the plaintiff's administrative grievances were pending) are time barred. Specifically, for claims brought pursuant to 42 U.S.C. § 1983, federal courts borrow the forum state's personal injury limitation period. *See Harris v. Hegmann*, 198 F.3d 153, 156-57 (5th Cir. 1999). In Louisiana, that period is one year, taking into account the pendency of administrative remedy proceedings which toll the running of the limitations period while such claims are pending. See id. at 158; La. Civ. Code art. 3492.

against the defendants pursuant to 42 U.S.C. § 1983, with prejudice, and that this action be dismissed.  Judgment shall be entered accordingly.

Signed in Baton Rouge, Louisiana, on <u>March 23, 2016</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**